MANUEL FEBO ORTEGA y OTRA, peticionarios y apelantes, *v.*
TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN,
HON. MANUEL REYES SERRANO, JUEZ, demandado.

Número: O-74-31          Resuelto: 10 de septiembre de 1974

*Angel L. Tapia Flores* y *F. Ariel Avilés Rodríguez,* abogados de
los peticionarios.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del
Tribunal.

Por motivo de un accidente automovilístico ocurrido el 3
de octubre de 1972, los recurrentes radicaron demanda el 20
de setiembre de 1973, emplazándose al demandado el 29 de
setiembre de dicho año, ya a punto de vencer el término
prescriptivo. El demandado contestó seis días después del año.
Su contestación incluía una reconvención de tipo compul-
sorio, en que se alegaba que era el propio demandante el
causante del referido accidente.

Los recurrentes solicitaron entonces la desestimación de la reconvención a base de que ésta estaba alegadamente prescrita. El Tribunal Superior se negó a desestimar y se recurre ante nos para revisar dicha resolución.

La materia aquí envuelta ha sido objeto de extensa consideración por las cortes de los Estados Unidos y por connotados comentaristas sobre los procedimientos que privan en ellas. En casos cuya jurisdicción deriva de la existencia de una cuestión federal la opinión más generalizada es que la interposición de una demanda suspende los efectos de la prescripción cuando se trata de reconvenciones compulsorias. Wright and Miller, *Federal Practice and Procedure*, 1971, vol. 6, pág. 109; Moore's *Federal Practice*, 2d ed. 1974, vol. 3, pág. 13-848, escolio 6; *Azada* v. *Carson*, 252 F.Supp. 988 (D.C. Haw. 1966); *De Vito* v. *Hoffman*, 199 F.2d 468 (D.C. Cir. 1952); *Ash* v. *United States*, 363 F.Supp. 345, 346 (D.C. Neb. 1973). El razonamiento en que se funda esta conclusión es que el demandante no sufre ciertamente perjuicio alguno por la aplicación de esta regla, ya que presumiblemente él tiene conocimiento de la reconvención o de su posibilidad y los testigos u otra prueba están igualmente disponibles a las partes. El grado de demora, además, estuvo bajo su control. La norma usualmente se deriva de las disposiciones de las Reglas 13(a), 13(f) y 15(c) de Procedimiento Civil Federal, exactamente equivalentes a nuestras Reglas 11.1, 11.6 y 13.3.

Como las reglas aplicables a este litigio son copia de las federales, a simple vista parece que lo que antecede es determinante de la controversia. Tal no es el caso, no obstante. Estamos precisamente ante una de las situaciones donde, por inadvertencia, se puede resolver un asunto a base de instituciones ajenas al Código Civil, acelerando el proceso de su erosión y mestizaje, cuando es bajo nuestro Código que se debe resolver la cuestión. *Ward* v. *Tribunal Superior*, 101 D.P.R. 865 (1974); *Ortiz* v. *Levitt & Sons*, 101 D.P.R. 290 (1973); *Merle* v. *West Bend Co.*, 97 D.P.R. 403, 411 (1969); Puig

Brutau, *La Acción Recíproca del Derecho Español y del Derecho Norteamericano en Puerto Rico*, 44 Rev. de Derecho Puertorriqueño 499 (1972).

█ La distinción entre lo sustantivo y lo procesal es a menudo tenue y borrosa, pero no en este caso. De lo que se trata aquí es determinar cómo y a beneficio de quién es que puede interrumpirse la prescripción y la prescripción no es materia procedimental, es materia sustantiva, objeto de tratamiento específico por nuestro Código Civil, Arts. 1840–1874, 31 L.P.R.A. secs. 5261–5304.

La propia doctrina y la jurisprudencia federales reconocen que, al menos en lo que toca a casos de diversidad de ciudadanía, los tribunales federales deben atenerse a la regla que prive en la demarcación concernida respecto a problemas de prescripción. *Guaranty Trust Co. of New York* v. *Grace W. York*, 326 U.S. 99 (1945). 6 Wright and Miller, *op. cit.*, 109. Varios consideran que en toda clase de litigio federal tal debe ser la norma. 3 Moore's, *op. cit;* págs. 13-246 y 247.

Examinemos, por tanto, la cuestión planteada a la luz del derecho civil. El artículo clave es el 1873, equivalente al 1973 del Código Civil Español, que lee así:

"La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor."

La interrupción que ocurre en virtud de este artículo cuando se habla del ejercicio de la causa, ¿beneficia tan sólo al actor o permite también la interposición de reconvenciones que surjan de la misma transacción o evento?

█ La opinión más autorizada es que la interrupción que nace de la interposición de una demanda beneficia también al demandado reconveniente cuando su acción dimana de los mismos hechos que motivaron el inicio del litigio original.

408

Scaevola, *Código Civil*, 1965, t. XXXII, vol. 2, págs. 958–9. Véanse también: Puig Peña, *Tratado de Derecho Civil*, 1958, t. I, vol. 2, pág. 444; Aubry et Rau, *Droit Civil Francais*, 6eme. ed. (par Esmein), vol. XII, págs. 434–5, apoyándose en la antigua máxima, *Quae Temporalia sunt agendum, perpetua sunt ad excipiendum*.

Se ha señalado también que "Es inadmisible oponer la prescripción, cuando el que la invoca, según el sentido objetivo de su conducta y de acuerdo con la buena fe, ha suscitado en su contrario la confianza de que la prescripción no sería invocada. . . . No es menester para que exista abuso que la conducta haya sido dolosamente dirigida a provocar la inactividad del titular. . . . Basta que haya sido. objetivamente idónea para producir de buena fe esta confianza." Díez Picazo, L., *La Prescripción en el Código Civil*, Barcelona, 1964, pág. 57. No estamos sosteniendo que tal es necesariamente la situación aquí, mas no podemos pasar por alto que en circunstancias análogas a la presente un demandado eventual puede considerar al transcurrir el tiempo que ambas partes han perdido interés en el asunto. Castigar a tal demandado con la pérdida de los derechos de reconvención compulsoria que puedan asistirle equivaldría a fomentar la proliferación del demandante tardío y sigiloso.

■ Si se examina el verdadero fundamento de la institución de la prescripción desembocamos en el mismo camino. Algunos comentaristas se inclinan a pensar que la razón de ser de la prescripción extintiva fluye de una presunción de abandono o renuncia por parte del litigante. Otros, los más, fundan la doctrina en propósitos de necesidad y utilidad social, que exigen que dentro de los términos que se especifiquen tengan que iniciarse los pleitos. Castán, *Derecho Civil Español, Común y Foral*, t. I, 11a. ed. 1971, pág. 833. La aceptación de las reconvenciones en situaciones como la presente no contradice este último propósito. Lo que ofendería nuestro sentido de justicia es precisamente lo contrario. No es la ló-

gica ciega a los objetivos y necesidades de nuestro ordenamiento jurídico y comunal la que debe gobernar la interpretación de nuestros códigos y leyes. Es la opuesta. De ésta es que depende en última instancia la sensibilidad al cambio social de nuestros estatutos y la facultad de promover, dentro de las pautas trazadas por el legislador, su remozamiento. La tesis de los recurrentes podría hallar apoyo, a lo sumo, en una aplicación mecánica de la teoría del abandono de las causas, pero no en razones de utilidad social. Bajo las segundas no es posible premiar la morosidad en la radicación de los litigios en la forma que se desea aquí. Hacerlo convertiría nuestros procedimientos en trampa para incautos y no en el instrumento de justicia sencillo y flexible que se supone que sean. Véase: *García* v. *Gobierno de la Capital,* 72 D.P.R. 138 (1951), donde, bajo un articulado distinto del Código Civil, se resuelve que no es invocable la prescripción en el caso de una demanda contra tercero.

*Por los fundamentos expuestos, se confirmará la resolución del Tribunal Superior.*